*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KEVIN WIESNER,

        Petitioner-Appellant,

v

WASHTENAW COUNTY COMMUNITY
MENTAL HEALTH,

        Respondent-Appellee.

FOR PUBLICATION
February 17, 2022
9:20 a.m.

No. 355523
Washtenaw Circuit Court
LC No. 20-000430-AA

Before: CAVANAGH, P.J., and JANSEN and RIORDAN, JJ.

PER CURIAM.

Petitioner, Kevin Wiesner, appeals by leave granted[1] the circuit court's amended order vacating the decision and order of the Michigan Office of Administrative Hearings and Rules (MOAHR) administrative law judge (ALJ). Respondent, Washtenaw County Community Mental Health (WCCMH), denied petitioner's request for additional funding that petitioner claimed was necessary to achieve his Individualized Plan of Service (IPOS), and subsequently issued a Notice of Adverse Benefits Determination. The ALJ reversed that decision and ordered WCCMH to reassess petitioner and to authorize sufficient funding to meet all the goals in his IPOS. WCCMH appealed in the circuit court, and the circuit court vacated the ALJ's decision and order, concluding that it exceeded the ALJ's scope of authority. Because WCCMH had no right to appeal the ALJ's decision in the circuit court, we reverse both the circuit court's order vacating the ALJ's decision and order, and the circuit court's order denying petitioner's motion for summary disposition premised on the claim that WCCMH had no right to appeal. The decision and order of the ALJ are reinstated.

---

[1] *Wiesner v Washtenaw Co Community Mental Health*, unpublished order of the Court of Appeals, entered March 26, 2021 (Docket No. 355523).

## I. PERTINENT FACTS AND PROCEEDINGS

The Medicaid program is "generally a need-based assistance program for medical care that is funded and administered jointly by the federal government and individual states." *Hegadorn v Dep't of Human Servs Dir*, 503 Mich 231, 245; 931 NW2d 571 (2019). To receive federal Medicaid funds, states must develop a plan consistent with federal requirements. 42 USC 1396-1. Each state must designate "a single State agency to administer or to supervise the administration of the plan[.]" 42 USC 1396a(a)(5); see also 42 CFR 431.10(b)(1). The Michigan Department of Health and Human Services (MDHHS) is the single state agency responsible for administering Michigan's Medicaid program.

The MDHHS "contracts with regional prepaid inpatient health plans ('PIHPs'), which are public managed care organizations that receive funding and arrange and pay for Medicaid services." *Waskul v Washtenaw Co Community Mental Health*, 979 F3d 426, 436 (CA 6, 2020), citing 42 USC 1396u-2(a)(1)(B); MCL 400.109f. The MDHHS "has supervisory and policymaking authority over the PIHPs and must ensure that PIHPs retain oversight and accountability over any subcontractors. PIHPs subcontract with community organizations that provide or arrange for mental health services for recipients . . . ." *Waskul*, 979 F3d at 436-437. WCCMH subcontracts with the PIHP responsible for southeast Michigan, Community Mental Health Partnership of Southeast Michigan (CMHPSM), which also has authority over community mental health agencies in Lenawee, Livingston, and Monroe counties.

Michigan offers funding and support to qualifying individuals with disabilities to help them live independently in their home communities instead of in institutionalized care facilities. *Waskul*, 979 F3d at 435. This program is called Community Living Support (CLS) and is authorized by a Medicaid waiver from the federal government called the Habilitation Supports Waiver (HSW). *Id*. at 435-436. The CLS program furthers participants' "self-determination by allowing them to structure their own support services based on their medical needs." *Id*. at 436. The HSW is financed through "capitation procedures," which "means that the federal government provides [PIHPs] . . . with a fixed amount of funding for each person participating in the CLS program, regardless of how many services the entity ultimately provides to the recipient. The PIHP then determines how to allocate these funds to recipients." *Id*. at 437.

Individuals who choose to receive CLS services go through what is referred to as a person-centered planning process, which results in an individual plan of service (IPOS) and a corresponding budget for CLS services. *Id*. "The IPOS describes the services that have been deemed 'medically necessary' for each recipient based on criteria defined in Michigan's Medicaid Provider Manual." *Id*. The budget ostensibly reflects the costs of the services and supports necessary to implement the IPOS. *Id*. The individual then enters a " 'self-determination arrangement' with their local community mental health service program." *Id*. Under a self-determination arrangement, individuals decide how to spend their budget to meet their IPOS goals. *Id*. at 437-438. The individual is responsible for "hiring, scheduling, and paying staff, as well as selecting, arranging, and paying for services, supports, and treatments listed in the IPOS. A fiscal intermediary actually holds the funds and pays bills directed to them." *Id*. at 438. "Budgets for CLS services are calculated by multiplying how many hours of services a participant's IPOS calls for by a specific rate." *Id*.

Petitioner is a severely challenged Medicaid recipient who receives CLS services under a self-determination agreement. In March 2019, petitioner's mother and guardian asked petitioner's supports coordinator at WCCMH for additional funds to hire higher skilled staff and pay them $15 an hour. WCCMH denied the request on the basis that there had been no change in petitioner's condition or behavior since his most recent CLS budget had been set, and therefore, the increased funds were not medically necessary. WCCMH affirmed its denial in an internal review. Subsequently, petitioner's guardian requested a state fair hearing.

The ALJ presiding over the hearing concluded that petitioner had proved by a preponderance of the evidence that WCCMH's denial had been improper and that the current CLS authorization was insufficient to meet the goals of petitioner's IPOS. The ALJ acknowledged that it "had no authority to order the WCCMH to pay Petitioner a specific CLS rate, or to increase the CLS rate, but rather can only determine whether the CLS authorization (determined by rate and hours) is sufficient to meet the goals in Petitioner's IPOS." The ALJ reiterated that the budget was not sufficient. Acknowledging WCCMH's argument that the current rate was sufficient because there had been no change in petitioner's condition, the ALJ stated that it was "apparent from the extensive record in this matter, including past appeals, that Petitioner's CLS authorization [had] been insufficient for some time, at least since 2015. In other words, if the past authorization was insufficient, WCCMH cannot seriously argue that the current authorization is sufficient because there has been no change in Petitioner's condition."

WCCMH appealed the ALJ's decision and order to the circuit court. In a motion for summary disposition brought under MCR 2.116(C)(4) and a motion to dismiss brought under MCR 7.211(C)(2)(a), petitioner argued that the circuit court did not have jurisdiction because WCCMH did not have a right to appeal. The circuit court denied petitioner's motions and eventually reversed the ALJ's decision and order on the basis that "[i]t [was] beyond the scope of authority of an administrative law judge . . . to rewrite [petitioner's CLS] budget . . . ." Thereafter, an amended order was entered vacating the decision and order of the ALJ, closing the case, and this appeal followed.

## II. DISCUSSION

Petitioner argues that WCCMH did not have the right to appeal petitioner's favorable fair hearing decision to the circuit court. We agree.

We review de novo a circuit court's decision on a motion for summary disposition. *Dextrom v Wexford Co*, 287 Mich App 406, 416; 789 NW2d 211 (2010). To the extent that resolution of this issue involves statutory interpretation, we review de novo whether the circuit court properly interpreted and applied the relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the Legislature's intent. *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217; 801 NW2d 35 (2011).

To receive federal Medicaid funds, states must develop a plan consistent with federal requirements. 42 USC 1396-1. Among the requirements for obtaining federal funds for state Medicaid programs, states must provide "an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon

with reasonable promptness[.]" 42 USC 1396a(a)(3); see also 42 CFR 431.205(b)(1). "State agency" refers to the single state agency responsible for administering a state's Medicaid program. See 42 USC 1396a(a)(5); 42 CFR 431.10(b)(1). In Michigan, that agency is the MDHHS. See *Waskul*, 979 F3d at 436. The MDHHS contracts with 10 prepaid inpatient health plans (PIHPs) and numerous local community mental health service programs (CMHSPs) to dispense Medicaid benefits. WCCMH is a CMHSP under contract with the MDHHS to provide Medicaid-covered services to people who reside in WCCMH's service area. See *id*.

Under the authority of MCL 400.9(1), the MDHHS appointed the Michigan Office of Administrative Hearings and Rules (MOAHR) to perform the fair hearings related to Medicaid claims. Specifically, the "MDHHS Director has appointed the ALJs of MOAHR for DHHS the authority to hear and issue final decisions in contested cases requested by individual residents, patients, consumers, or beneficiaries." *Mich Office of Admin Hearings and Rules for the Benefit Servs Div Admin Hearing Pamphlet*, p 1 § 102. Statutes, regulations, and rules relevant to the Medicaid fair hearing in the present case are found in 42 CFR 438.400 through § 438.424 (rules governing appeals from adverse benefit determinations of, among others, managed care organizations and PIHPs), §§ 271 through 288, and § 301 of Michigan's Administrative Procedures Act of 1969 (APA), MCL 24.201 *et seq*., and Mich Admin Code R 792.11001 through R 792.11018. Additional guidance is available in the *State Medicaid Manual*, published by the Centers for Medicare & Medicaid Services to help guide states in administering their Medicaid programs,[2] and the MOAHR's *Administrative Hearings and Rules*. The relevant provisions in each of these sources are those addressing posthearing procedures.

The federal scheme does not provide to agencies similarly situated to WCCMH a right to appeal a fair hearing decision favorable to a Medicaid beneficiary. Rather, when a fair hearing results in a decision favorable to the Medicaid applicant or beneficiary, the federal scheme requires immediate corrective action. That is, 42 CFR 438.424(a) provides that if the state fair hearing officer reversed a managed care organization's or PIHP's decision to deny, limit, or delay services that were not furnished while the appeal was pending, that entity "must authorize or provide the disputed services promptly and as expeditiously as the enrollee's health condition requires but no later than 72 hours from the date it receives notice reversing the determination." This is consistent with 42 CFR 431.246, which provides that after fair hearings that do not involve managed care organizations or PIHPs, if the hearing decision is favorable to the applicant or beneficiary, "[t]he agency must promptly make corrective payments, retroactive to the date an incorrect action was taken . . . ." Likewise, the *State Medicaid Manual*, which is published by the federal administrator of the Medicaid program, *Hegadorn*, 503 Mich at 246, advises at § 2903.3(A) that "[t]he hearing authority's decision is binding upon the State and Local agencies."

---

[2] Our Supreme Court explained in *Hegadorn*, 503 Mich at 249 n 11:

> The manual is not a product of formal rulemaking and does not have the force of law. *Hobbs ex rel Hobbs v Zenderman*, 579 F3d 1171, 1186 n 10 (CA 10, 2009). However, federal courts generally consider the manual to be strong persuasive authority to the extent that it is consistent with the purpose and text of federal statutes. *Id*.; *Hughes v McCarthy*, 734 F3d 473, 478 (CA 6, 2013).

In support of its claim of right to appeal the ALJ's decision, WCCMH does not address federal statutes or federal guidance. Instead, WCCMH quotes petitioner's statement that "WCCMH cannot appeal [ ] because for purposes of Medicaid fair hearings, local agencies such as WCCMH *are* the state," and argues that WCCMH is not the "state" under federal law. To support its position, WCCMH relies on the Sixth Circuit's determination in *Waskul*, 979 F3d at 443, that WCCMH's regional PIHP was not entitled to immunity under the Eleventh Amendment because it was not an arm of the state. As additional evidence that it is not the state or an arm of the state, WCCMH refers to the provision in its contract with the MDHHS describing the relationship between the MDHHS and the CMHSP as "client and independent contractor," and further stating that "[n]o agent, employee, or servant or the CMHSP or any of its subcontractors shall be deemed to be an employee, agent, or servant of the state for any reason."

Whether WCCMH is an "arm of the state" for purposes of immunity under the Eleventh Amendment, or whether the relationship between the MDHHS and WCCMH is that of client and independent contractor, has no bearing on whether WCCMH stands in the shoes of the MDHHS for purposes of providing, or denying, Medicaid benefits to enrollees. Regarding WCCMH's relationship to the MDHHS, an independent contractor can be an agent. Restatement of Agency, 2d, § 14N (1958) ("One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor."). Moreover, the latter part of the contract provision, stating that the CMHSP (WCCMH) is not "an employee, agent, or servant of the state for any reason," appears to be an attempt to limit the state's liability for torts committed during the performance of Medicaid services.[3] None of WCCMH's arguments for not being an "arm of the state" under federal law preclude that WCCMH stands in the shoes of the MDHHS when it comes to the provision of Medicaid services in its service area.

Petitioner asserts that WCCMH does not have a right of appeal because the ALJ's decision was the MDHHS's "final administrative action" on petitioner's request. The MOAHR states in its *Admin Hearing Pamphlet*, § 920, that the decision of an ALJ for the MDHHS involving Medicaid beneficiaries "is the final decision of DHHS." As already indicated, the *State Medicaid Manual* advises at § 2903.3(A) that "[t]he hearing authority's decision is binding upon the State and Local agencies." Petitioner argues that, because the MDHHS is the single state agency responsible for administration of the Medicaid program, and because the decision from the ALJ was the MDHHS's "final decision" on petitioner's request, neither the MDHHS nor WCCMH, the local agency through which the MDHHS provides Medicaid benefits, can appeal. In other words, the MDHHS cannot appeal its own decision, and the WCCMH is bound by the MDHHS's decision regarding Medicaid beneficiaries in an MDHHS program.

Contrariwise, WCCMH argues that the ALJ's decision and order is not a decision of the MDHHS because the MOAHR is an independent agency within the Department of Licensing and Regulatory Affairs (LARA), and performs its duties independently of LARA. Because the ALJ

---

[3] The rest of the contract provision states: "The CMHSP will be solely and entirely responsible for its acts and the acts of its agents, employees, servants, and sub-contractors during the performance of a contract resulting from this contract."

was part of the MOAHR, and the MOAHR is an independent agency, the ALJ's decision was not the MDHHS's decision. WCCMH's argument is unpersuasive.

It is true that the ALJ is part of the MOAHR, and the MOAHR is an independent agency located within LARA. Nevertheless, although MDHHS can authorize the ALJs of MOAHR to perform fair hearings, MDHHS retains its responsibility to administer the Medicaid program in accordance with state and federal guidelines. As set forth in the State Plan Amendment (SPA) #16-0120, effective April 1, 2016, the agreement MDHHS has with LARA is that LARA is responsible for providing administrative hearings but MDHHS and LARA "jointly conduct operations to the extent necessary to assure MDHHS control over Medicaid decisions and fair hearings." The ALJs for the MDHHS are neutral decision-makers; in routine matters such as this one, their decisions are the final decisions of the MDHHS. The MDHHS retains final authority to change or modify a particular decision of an ALJ, but such review is limited to conclusions of law. See SPA #16-0120, 4/1/16, p 15; see, also, MCL 400.9. For these reasons, the January 6, 2020 decision and order of the ALJ, which he signed as "Administrative Law Judge for Robert Gordon, Director, Department of Health and Human Services," was the MDHHS's final determination of petitioner's request for an increase in his CLS funds.

Moreover, WCCMH was bound by the decision because MDHHS bears sole responsibility for administering Michigan's Medicaid program, and it fulfills this responsibility by contracting with CMHSPs, such as WCCMH, which execute the Medicaid program in their service areas. WCCMH provides the Medicaid services and supports available under the MDHHS programs to eligible enrollees who live in WCCMH's service area, and it appears to provide the only avenue for participation in the particular Medicaid programs in which petitioner is engaged. Medicaid programs are the responsibility of the MDHHS, as the single state agency, and thus, when the MDHHS issues a final decision involving Medicaid beneficiaries in one of its programs, WCCMH is bound by that decision and may not appeal it.

WCCMH contends that numerous authorities support its right to an appeal. WCCMH first asserts that its right to appeal is guaranteed by Michigan's Constitution, Const 1963, art VI, § 28, which provides in relevant part that "[a]ll final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law." This provision is of little help to WCCMH. " '[A]s provided by law' contemplates that the Legislature will provide the manner in which judicial review shall occur." *Midland Cogeneration Venture Ltd Partnership v Naftaly*, 489 Mich 83, 94; 803 NW2d 674 (2011). As discussed in the following paragraphs, the Legislature has provided Medicaid applicants or beneficiaries a right to direct review by the circuit court of adverse decisions issued by an ALJ for the MDHHS after a fair hearing. Further, it was the MDHHS's obligation toward petitioner as a Medicaid beneficiary that was at stake in the hearing, not any "private rights" that WCCMH might have. Const 1963, art VI, § 28 does not support WCCMH's assertion of a right of appeal.

WCCMH next asserts that it has a right to appeal because the ALJ's decision and order stated on page 12 that "[a] party may appeal this Order in circuit court within 30 days of the receipt date." MCL 24.205(h) defines "party" as "a person or agency named, admitted, or properly

seeking and entitled of right to be admitted, as a party in a contested case."[4] The ALJ's statement at the end of the decision is curious and contradictory to provisions in the administrative code that provide judicial review only to Medicaid applicants or beneficiaries. And we will not conclude that information regarding the options for subsequent review tacked on to the end of a hearing decision outweigh the constitutional, statutory, and administrative authorities that limit judicial review to Medicaid applicants or beneficiaries.

WCCMH further asserts that its right to judicial review is supported by Mich Admin Code, R 792.11017, which provides:

> Decisions are appealable to the circuit court in the following manner:
>
> (a) Public assistance decisions are appealable to the circuit court within 30 days of receipt of the decision as to matters of law pursuant to the social welfare act, 1939 PA 280, 400.1 to 400.122.
>
> (b) Other decisions are appealable as provided by applicable governing statute.

Relevant to the instant case, MCL 400.109c(8) states:

> An eligible person who is receiving home- or community- based services under this section,[5] and who is dissatisfied with a change in his or her plan of care or a denial of any home- or community-based service, may demand a hearing as provided in [MCL 400.9] and subsequently may appeal the hearing decision to circuit court as provided in [MCL 400.37].

MCL 400.9 requires the director of the MDHHS to promulgate rules for fair hearings, and authorizes the director to appoint a hearing authority to perform such hearings; it does not address how the parties to the fair hearing may proceed after a decision is issued. MCL 400.37 provides that an applicant or recipient for assistance whose application for assistance is disallowed, or who is dissatisfied with the amount of assistance received or to be received, may demand a hearing as provided for in MCL 400.9 or MCL 400.65. If the applicant or recipient is unsatisfied with the result of the hearing, he or she "may appeal to the circuit court of the county in which he resides, which court shall have power to review questions of law involved in any final decision or determination of the state department." MCL 400.37. MCL 400.65 requires county social service boards to "prescribe rules and regulations for the conduct of hearings within the county department, and provide adequate procedure for a fair hearing of appeals and complaints by any applicant for or recipient of aid, relief, or assistance under the jurisdiction of the board."

MCL 400.109c(8) and MCL 400.37 expressly provide that a Medicaid applicant or beneficiary may appeal a decision by the MDHHS to the circuit court. Yet, neither statute expressly provides a right of appeal to Medicaid entities such as WCCMH. In fairness, neither

---

[4] The decision also stated: "A party may request a rehearing or reconsideration of this Order . . . ."

[5] Petitioner receives services under the HSW, which is a home-and-community-based program.

statute expressly precludes such right. However, given that the Legislature specifically addressed appeals by an aggrieved Medicaid applicant or beneficiary, but remained silent regarding appeals by an allegedly aggrieved Medicaid entity is an indication that the latter is without rights of appeal.

WCCMH also relies on MCL 600.631, which provides as follows:

> An appeal shall lie from any order, decision, or opinion of any state board, commission, or agency, authorized under the laws of this state to promulgate rules from which an appeal or other judicial review has not otherwise been provided for by law, to the circuit court of the county of which the appellant is a resident or to the circuit court of Ingham county, which court shall have and exercise jurisdiction with respect thereto as in nonjury cases. Such appeals shall be made in accordance with the rules of the supreme court.

This statute is of no help to WCCMH because, as already indicated, statutes, administrative codes, and the APA have specifically provided Medicaid applicants and beneficiaries a right of judicial review of an ALJ's decision in a case involving Medicaid benefits. See MCL 400.109c(8); MCL 400.37; Mich Admin Code, R 792.11017.

Finally, WCCMH contends that the APA, at MCL 24.301, provides for judicial review of an agency's final decision in contested cases as follows:

> When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law. . . .

The parties agree that this is a contested case.[6] They disagree, however, on whether WCCMH is a "person" for purposes of MCL 24.301. The APA uses "person" to mean "an individual, partnership, association, corporation, limited liability company, limited liability partnership, governmental subdivision, or public or private organization of any kind other than the agency engaged in the particular processing of a rule, declaratory ruling, or contested case." MCL 24.205(i). Petitioner argues that WCCMH is not a "person" as defined by the APA because, for purposes of the fair hearing, "WCCMH *is* the State." As already discussed, WCCMH relies on the Sixth Circuit's determination in *Waskul*, 979 F3d at 443, that WCCMH's regional PIHP was not an arm of the state to argue that it is not the state or an arm of the state. WCCMH seems to imply that because it is not an arm of the state, and given the aforementioned provisions in its contract, it is a "person" for purposes of MCL 24.301. For reasons already stated, WCCMH's arguments are unpersuasive.

---

[6] A "contested case" is "a proceeding, including rate-making, price-fixing, and licensing, in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing." MCL 24.203(3); see also Mich Admin Code, R 792.10103(g).

Equally unpersuasive is petitioner's argument that WCCMH is not a "person" as defined by the APA because WCCMH is the "agency" whose " 'particular processing' of [petitioner's] request for a rate increase" was challenged in the fair hearing. However, WCCMH is not an agency for purposes of MCL 24.205. The APA defines "agency," to mean "a state department, bureau, division, section, board, commission, trustee, authority or officer, created by the constitution, statute, or agency action." MCL 24.203(2); see also Mich Admin Code, R 792.10103(e). WCCMH is a component of Washtenaw County government. It is the county agency that contracts with the MDHHS to provide Medicaid benefits to eligible enrollees in its service area, but it is not an "agency" as defined by the APA and the administrative code.

However, even assuming for the sake of argument that WCCMH is a "person" for purposes of MCL 24.301, we still cannot conclude that the statute supports that WCCMH had a right to appeal the ALJ's decision in favor of petitioner. MCL 24.301 states that when a "person" has exhausted all administrative remedies, yet remains "aggrieved by a final decision or order in a contested case," that decision or order is "subject to direct review by the courts *as provided by law*." (Emphasis added.) As we have already pointed out, those statutes that address a right to judicial review of an administrative decision in the Medicaid context reflect the Legislature's intent to provide a right to review to the Medicaid applicant or beneficiary, but have remained silent with regard to agencies such as WCCMH. Given that the Legislature, in drafting various statutes, specifically addressed appeals by an aggrieved Medicaid applicant or beneficiary, while remaining silent regarding appeals by an allegedly aggrieved Medicaid entity like WCCMH, we conclude that the statutes reflect the Legislature's intent that the latter have no right of appeal.

In light of our resolution of this dispositive issue, we need not consider petitioner's other issues on appeal.

Because WCCMH had no right to appeal the ALJ's decision in the circuit court, we reverse both the circuit court's order vacating the ALJ's decision and order, and the circuit court's order denying petitioner's motion for summary disposition. The ALJ's decision and order are reinstated.

Reversed. The decision and order of the ALJ are reinstated.


/s/ Mark J. Cavanagh
/s/ Kathleen Jansen
/s/ Michael J. Riordan